ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY *v.* LAURENCE.

Opinion delivered February 10, 1913.

1. CARRIERS—PASSENGERS.—A common carrier is bound to take any and all persons who apply for passage, unless some special reason exists for refusing them, and when a person goes to the station within a reasonable time before the hour of departure of the train with the *bona fide* intention of taking passage, the law implies the acceptance of him as a passenger. (Page 550.)

2. CARRIERS—PASSENGERS—QUESTION FOR JURY.—When plaintiff offered to purchase a ticket two hours before train time and defendant refused to sell him a ticket and he was refused admission to the

waiting room, and brought an action for damages, resulting from his being obliged to remain outside the waiting room, his right to a recovery is dependent upon whether he had become a passenger or not, and that question is one for the determination of the jury.  (Page 551.)

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; reversed.

### STATEMENT BY THE COURT.

The complaint alleged that on the 24th day of March, 1912, the appellee went to appellant's depot at Bierne about two hours before the passenger train was due, for the purpose of taking passage to Prescott; that he applied at the ticket window for a ticket, stating that his purpose in asking for a ticket at that time was to gain admittance to the waiting room as it was a cold and disagreeable day.  He was informed that it was not train time and that the station waiting room for colored people was not open; that he had no other place to go and waited about the station, and the waiting room was not opened although he repeatedly asked for admission; that by reason of the exposure to the cold he contracted a severe cold; that he was confined to his room for about two weeks and had a severe cold for a month; that he incurred expenses and suffered great humiliation, and was damaged in the sum of $5,000.

The appellant denied all the material allegations of the complaint.

The appellee introduced evidence tending to support the allegations of his complaint.  The appellant asked the court to instruct the jury to the effect that if appellee presented himself and asked for a ticket two hours before the train upon which he expected to take passage arrived, and that the agent refused to sell him a ticket then he was not a passenger and had no right of access to the waiting room until he again, and within a reasonable time before the train was due, asked for or purchased a ticket.  The appellant also presented the following prayer for instruction:

"4.  You are further instructed that the defendant

had the right to make reasonable rules as to the reception of passengers, and if you find from the evidence that it had a rule that tickets should be sold only thirty minutes before the arrival of the train upon which a passenger was expected to take passage, and that the agent of the defendant refused to sell a ticket before that time, then you are instructed she had a right to so refuse, and the plaintiff did not become a passenger until he applied for a ticket within that time; and if you find that after once asking for a ticket that he was told by the agent that it was too early to sell him a ticket, then he was not accepted as a passenger and he had no right to the privilege of the waiting room."

The court refused appellant's prayers for instructions, and asked the jury the following questions:

1.  Did the agent of the railroad company refuse plaintiff admission to its colored waiting room as claimed by him in his testimony?

2.  If defendant did refuse plaintiff admission to its waiting room, as claimed by him, was he damaged on account thereof, by reason of any pain or suffering caused by sickness contracted on account of such refusal, and, if he was damaged, how much?

The appellant objected and excepted to the rulings of the court in asking the questions and giving same as instructions.   The jury answered the first question "Yes," and the second is answered "Yes, seventy-five dollars."

The appelant moved for judgment notwithstanding the verdict.   The court overruled the motion and entered judgment in favor of appellee for $75, and appellant duly prosecutes this appeal.

*E. B. Kinsworthy* and *W. V. Tompkins,* for appellant.

1.  The statute under which this suit is brought is for the benefit of passengers only, those who apply within a reasonable time for transportation and are accepted.

Appellee was not a passenger because he did not apply for a ticket within a reasonable time, and the com-

pany through its agent declined to sell him a ticket. A railway company has a right to make reasonable rules and regulations for the conduct of its buiness. 6 Cyc. 545; 65 Ark. 225; 94 Ark. 153; 77 Ark. 290 and cases cited; Hutchinson on Carriers, § 1097; *Id.* 1015; *Id.* 1006; 124 N. C. 123; 62 L. R. A. (Ky.) 405; 101 N. W. 1033; 4 L. R. A. (N. S.) 254, 260.

2. The relation of carrier and passenger is created only by contract express or implied. It is not enough that one offers himself as a passenger, but it must appear that he has been accepted as such. And where a railway company refuses to sell a party a ticket, that party is not a passenger, and while it may be true that he would be entitled to some relief for the refusal to sell the ticket, yet it would not subject the company to a suit for damages under a statute providing for keeping open its station for passengers. 108 Fed. 16, 17; 200 Mass. 537; 86 N. E. 934; Hutchinson on Carriers, § 997; 4 Elliott on Railroads 1578; 6 Cyc. 538; 24 L. R. A. 521, 524; 84 N. E. 464; 129 Ill. App. 27, 37; 105 S. W. (Ky.) 124; 128 Mo. 64; 76 S. W. (Mo.) 680; 55 So. (Ala.) 111; 168 Ill. 115; 39 L. R. A. 148; 45 Ark. 368.

*H. B. McKenzie,* for appellee.

One need not necessarily have a ticket in order to become a passenger. The clear meaning of the statute, Kirby's Dig., § 6634, is that the relation of carrier and passenger may exist at other times through the day than thirty minutes before a train is due.

Where one presents himself at the proper time and applies for a ticket when he is able, willing and qualified to become a passenger, he is a passenger as a matter of law, and the contract is implied from such acts and circumstances. Hutchinson on Carriers, § 997; 52 So. 355; 148 Ill. App. 197; 89 Va. 639.

Wood, J., (after stating the facts). Section 6634 of Kirby's Digest is as follows:

"All persons who own or operate any line or lines of railroad in this State shall keep separate waiting rooms now provided for in section 6622 in all depot buildings

now erected or that may hereafter be erected, for the accommodation of their passengers, open both day and night for the free and unrestricted use of their said passengers. And that said waiting rooms shall at all proper times be comfortably heated and at all times supplied with wholesome drinking water, and shall in all proper respects be kept and maintained in a sanitary and clean manner. Provided, however, that all railroads running neither freight nor passenger trains over said lines after night shall be allowed to close their waiting rooms at 7 o'clock P. M. and open their waiting rooms to the public at 6 o'clock A. M.''

Under the undisputed testimony appellant did not come within the proviso of the above section. Therefore, it was required to keep its waiting room open both day and night for the ''free and unrestricted use of its passengers.''

The questions propounded to the jury were tantamount to instructions telling them that under the testimony of the appellee he was a passenger. These questions, in effect, took away from the jury the issue as to whether or not appellee was a passenger, and, in fact, declared as a matter of law that he was a passenger under the evidence, and only submitted to the jury the question as to whether or not appellee was refused admission to the waiting room, and if so, whether or not he was damaged on account of such refusal. The court erred in propounding these questions in the form presented. The issue as to whether or not appellee was a passenger was for the jury under the evidence, as well as the issue as to whether or not he was refused admission to appellant's waiting room, and the issue as to the amount of damages if he was refused admission.

Appellant contends that appellee was not a passenger; First, because he did not apply for a ticket within a reasonable time; and, second, because the company, through its agent, declined to sell him a ticket.

''The purchase of a ticket is not a prerequisite to

the relation of passenger and carrier under our statute."
*St. L. & S. F. Ry. Co.* v. *Kilpatrick,* 67 Ark. 47.

In *St. L. & S. F. Ry. Co.* v. *Blythe,* 94 Ark. 153, Justice HART, speaking for the Court, said: "It is undoubtedly competent for a railroad company, as a means of protetction against imposition and to facilitate the transaction of its business, to require passengers to procure tickets before entering the car and where this requirement is duly made known, and reasonable opportunity afforded for complying with it, it may be enforced either by expulsion from the train regardless of a tender of the fare in money, or by requiring the payment of a larger fare upon the train than that for which a ticket might have been procured."

The rule forbidding the sale of tickets until thirty. minutes before train time was doubtless a reasonable regulation for the proper management of appellant's business at a station like Bierne.  Appellant could have refused to receive as a passenger any one who neglected or refused to purchase a ticket, without liability for so doing.  This it could do as one method for the enforcement of its rule.  *St. Louis, etc., Ry. Co.* v. *Blythe, supra.* Yet it can not be doubted that if appellant's agent had sold a ticket more than thirty minutes before train time, to one who intended to take passage on its train, appellant would be liable in damages if it denied to the holder of the ticket the right of taking passage on its train, or if appellant's agent had ignored the rule of the company by admitting one to ride on the train who had not purchased a ticket but who paid his fare as a passenger, such person would be, and have all the rights of, a passenger the same as if he had purchased a ticket in compliance with the company's rule.  Therefore one might become a passenger although he might not have applied for the purchase of a ticket in compliance with the company's rule, or he might become a passenger even though the company's agent declined to sell him a ticket.  The sale and purchase of a ticket would be cogent evidence of an intention on the part of the purchaser to become a

passenger, as well as on the part of the carrier to receive him as such. But the purchase of a ticket does not create the relation of passenger and carrier, nor does the refusal to sell, or to buy, a ticket prove the relation does not exist. These were evidently matters for the consideration of the jury in determining whether the relation of carrier and passenger existed between appellant and appellee, but it is not correct to make the existence or non-existence of that relation depend upon whether or not a ticket has been purchased. The court therefore did not err in refusing appellant's prayers in which it sought to have the jury so instructed. In *Phillips* v. *Southern Ry. Co.,* 124 N. C. 123, the Court said:

"A party coming to a railroad station with the intention of taking the defendant's next train becomes, in contemplation of law, a passenger on defendant's road, provided that his coming is within a reasonable time before the time for departure of said train. To constitute him such a passenger, it is not necessary that he should have purchased his ticket, as seems to have been considered by his Honor. 1 Fetter, Carr. of Pass. 228. But the purchase of the ticket would probably be considered the highest evidence of his intention. But, still, it is his coming to the station within a reasonable time before, with the intention to take the next train, that created the relation of passenger and carrier."

Mr. Hutchinson says:

"The general rule is that where a person, with the *bona fide* intention of taking passage upon a train, goes to the station within a reasonable time prior to the hour of departure of the train, and there, either by the purchase of a ticket or in some other manner, indicates to the carrier his intention to take passage, from that time on, while waiting for the train, he is entitled to all the rights and privileges of a passenger." Hutchinson on Carriers, § 1006.

Where one thus goes to the station within a reasonable time before the hour of departure of the train with the *bona fide* intention to take passage, the law implies

the acceptance of him as a passenger. Hutchinson on Carriers, § 992. For a common carrier is bound to take any and all who may thus apply for passage, unless some special reason exists for refusing them, and the burden is upon the carrier to justify its refusal to accept those who apply under such circumstances, by showing the existence of the special facts to warrant its conduct. In the case at bar there was no testimony to show that appellant had refused to receive appellee as a passenger. The evidence only shows that it refused to sell him a ticket until within thirty minutes before train time.

The law required, as we have seen, that appellant keep its waiting room open day and night for the accommodation of passengers. So the question was whether appellee had become a passenger so that he might avail himself of its benefits. As to whether or not appellee had become a passenger under the rules above announced, the court should have submitted to the jury under proper instructions. Whether or not one has become a passenger under such circumstances is a question of fact, not of law. For although the facts were undisputed, still the quetsion was one about which reasonable minds might draw different conclusions. There could be no fixed standard, by which to determine whether or not one had gone to the station within a reasonable time, before the arrival of the train with the *bona fide* intent to become a passenger thereon. Each case necessarily must depend upon its own facts.

In view of a new trial it is proper to say that if the evidence is the same it will be proper for the court to submit the doctrine of avoidable consequences.

For the error indicated the judgment is reversed and cause is remanded for new trial.