## CHICAGO, R. I. & P. RY. CO. v. STEPHENS.

### (Circuit Court of Appeals, Sixth Circuit.  December 8, 1914.)

### No. 2492.

1. COURTS (§ 405*)—UNITED STATES COURTS—DETERMINATION OF QUESTIONS OF JURISDICTION.

It is the duty of the Circuit Court of Appeals to consider a claim that the pleadings and proof do not show diverse citizenship, though counsel fail to argue that question, and attempt to waive the assignments of error raising it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

2. COURTS (§ 322*)—UNITED STATES COURTS—JURISDICTION—ALLEGATIONS IN PLEADINGS.

A declaration, in an action against a railroad company, alleging that plaintiff was a citizen of Tennessee and that defendant was a corporation existing and doing business in the states of Arkansas and Tennessee, did not show diverse citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

3. COURTS (§ 322*)—UNITED STATES COURTS—JURISDICTION—ALLEGATIONS IN PLEADINGS—"CITIZEN."

In an action against a railway company by a citizen of Tennessee, a declaration, alleging that the railway company was a citizen of Arkansas, without any allegation that it was organized as a corporation under the laws of Arkansas, did not show that it was a "citizen" of Arkansas, within Const. U. S. art. 3, § 2, providing that the judicial power of the United States shall extend to controversies between citizens of different states, and Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. 1913, § 991]) § 24, giving District Courts original jurisdiction in case of diverse citizenship; especially where the corporate character of defendant was neither admitted nor proved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*

For other definitions, see Words and Phrases, First and Second Series, Citizen.]

4. APPEAL AND ERROR (§ 1178*)—REVERSAL FOR NEW TRIAL ON ISSUE OF JURISDICTION.

Where diverse citizenship was not sufficiently alleged or proved, but it appeared probable that the facts would warrant an amendment showing the required diversity, a judgment would be reversed and the cause remanded with permission to frame and try an issue of fact with respect to diversity of citizenship alone without setting aside the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604–4620; Dec. Dig. § 1178.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. TRIAL (§ 420*)—MOTION FOR DIRECTED VERDICT—WAIVER.**

Any claim of error respecting the denial of a motion for a directed verdict, made at the close of plaintiff's evidence, was waived by defendant by presenting its evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

**6. TRIAL (§ 176*)—RESERVATION OF GROUNDS OF REVIEW—MOTION FOR DIRECTED VERDICT.**

A motion to direct a verdict is addressed to the condition of the case at the close of the evidence, and not to errors in the charge subsequently delivered, especially where no exception is taken to the charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 399; Dec. Dig. § 176.*]

**7. TRIAL (§ 141*)—QUESTIONS FOR JURY—MATTERS NOT IN ISSUE.**

Where, in a passenger's action against a railroad company for injuries caused by remaining all night in a cold and filthy depot, plaintiff's purchase of a ticket and defendant's failure to complete the performance of the contract of carriage were admitted for all intents and purposes, it was not necessary to submit any question relative thereto to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

**8. CARRIERS (§ 275*)—PASSENGER'S ACTION FOR INJURIES—SUFFICIENCY OF DECLARATION.**

A declaration, alleging that plaintiff purchased a ticket from defendant's authorized agent over the line of a connecting carrier to W., and from W. to her destination over defendant's railroad; that upon reaching W. she was told she could go no further on account of high water; that after spending the night in the depot at W., which was filthy, cold, and inadequately heated, and contained men who were drunk and used unpleasant·language, she turned back; that, though the railroad company knew of the high water and was issuing daily bulletins relative thereto, the agent negligently and wantonly sold plaintiff a through ticket; and that in consequence she sustained certain injuries—though possibly open to a demand for specifications concerning the acts and omissions of defendant, was sufficient, in the absence of such a demand, to advise defendant of the nature of the testimony that would be offered, and to justify evidence tending to show negligence on defendant's part.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1076, 1077; Dec. Dig. § 275.*]

**9. CARRIERS (§ 272*)—DUTIES TOWARD PASSENGERS—ACCOMMODATIONS AT STATIONS.**

A railway company, which authorized the agents of a connecting carrier to sell through tickets over its line, was chargeable with notice that persons holding such tickets might be brought to the junction point in ignorance of the withdrawal of its regular train from that point because of high water, and, though such high water justified the withdrawal of the train, it did not justify it in failing to furnish such passengers with facilities for their accommodation and safety in the depot at the junction point, at least for a reasonable time after their arrival.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1072–1074; Dec. Dig. § 272.*]

**10. CARRIERS (§ 278*)—PASSENGER'S ACTION FOR INJURIES—QUESTIONS FOR JURY.**

Where the holder of a through ticket reached the junction point of defendant's road and another railroad at midnight, in ignorance that defendant's train scheduled to leave that point at 3:25 had been withdrawn because of high water, and not having sufficient money to pay the expense of going to a hotel in addition to the expense of the return trip made

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

necessary by the withdrawal of such train, and being unable until morning to clear up conflicting statements as to trains for her destination, she remained until 9 o'clock in the depot, which was cold and filthy, and where she was frightened by the conduct of a drunken man, it was a question for the jury whether she was justified in remaining in the depot the rest of the night, and it could not be said as a matter of law that she was not a passenger when she entered the depot, or that she lost her rights in that respect by staying there too long.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1080, 1081; Dec. Dig. § 278.*]

11. CARRIERS (§ 272*)—DUTIES TOWARD PASSENGERS—ACCOMMODATIONS AT STATIONS.

If she was justified in remaining in the depot until the next morning, she was a passenger to whom defendant owed the duty of exercising reasonable care and diligence to furnish her with a reasonably safe and comfortable depot until the departure of the train for which she was waiting, under the common law and by Kirby's Dig. Ark. § 6634, requiring railway companies running trains at night to keep their waiting rooms open day and night for the use of passengers and at proper times and seasons to keep them clean and comfortably heated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1072–1074; Dec. Dig. § 272.*]

12. EVIDENCE (§ 528*)—OPINION EVIDENCE—SUBJECTS OF EXPERT TESTIMONY.

In an action for injuries caused by remaining all night in a railway depot which was filthy and cold, where plaintiff was frightened by the conduct of a drunken man, expert testimony as to whether these conditions would cause the nervousness and irregularity in the menstrual flow of which plaintiff complained was properly admitted, as it related to a subject not familiar to the layman, and the opinion only of a competent expert would be of any value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2335–2337; Dec. Dig. § 528.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Mrs. W. G. Stephens, by next friend and husband, W. G. Stephens, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

S. P. Walker, of Memphis, Tenn., for plaintiff in error.

H. E. Taylor, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The railroad company seeks to reverse a judgment and set aside a verdict recovered against it for personal injuries sustained by Mrs. Stephens. The action was originally brought by Mrs. Stephens against the Chicago, Rock Island & Pacific Railroad Company and the receivers of the Missouri & North Arkansas Railroad Company. The receivers appeared specially by motion to dismiss the action as to them and their company, on the grounds that the company did not own or operate a railroad in Tennessee, and that the service attempted to be made upon them was insufficient. The motion

was granted as to service, and Mrs. Stephens then filed an amendment to her declaration, stating her complaint against the Chicago, Rock Island & Pacific Railroad Company alone.

[1-3] 1. Jurisdiction. Although eleven assignments are presented with the writ of error, defendant's counsel in their brief attempt to waive all of them except the first, sixth, and eleventh. This waiver is effective without doubt, save as to the second. That assignment is based upon a claim of error in entering judgment against defendant "for the reason that it does not appear in proof" that defendant "was a nonresident of the state of Tennessee," and upon the further claim that the declaration alleges that defendant "was a resident of the state of Arkansas, but fails to allege that it was a nonresident of Tennessee." It is the duty of the court to consider the question thus presented, in spite of the failure of counsel to argue it or the effort to waive it, because jurisdiction cannot be acquired by consent, nor be presumed; it must affirmatively appear upon the face of the record. M. C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 382, 4 Sup. Ct. 510, 28 L. Ed. 462; Thomas v. Board of Trustees, 195 U. S. 207, 211, 25 Sup. Ct. 24, 49 L. Ed. 160; Nichols Lumber Co. v. Franson, 203 U. S. 278, 282, 27 Sup. Ct. 102, 51 L. Ed. 181; Chi., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 419, 31 Sup. Ct. 460, 55 L. Ed. 521. Jurisdiction was invoked and rested only on the ground of diversity of citizenship. It is plain enough from the pleadings and proofs that Mrs. Stephens is a citizen of Tennessee and a resident of Memphis; but difficulty arises with respect to the Rock Island Company. It is alleged in the declaration that the company is "a corporation existing and doing business in the state of Arkansas and Tennessee," and, in the amendment, that the company "is a citizen of the state of Arkansas; * * * that the said railroad company is a corporation * * * operating a line of railroad from Wheatley, Ark., into Memphis, Tenn." In the summons issued against the railroad it is stated that the Rock Island Company is "a citizen of (the) state of Arkansas." Nothing further appears in the record tending to show the corporate character or place of origin of the company; indeed, these facts do not seem to have been regarded as important elements of the issues. The trouble with the allegations of the declaration is that they would not, if admitted, be sufficient under the authorities to justify taking jurisdiction of the action; for they charge that the company is "a corporation existing and doing business in the state of Arkansas and Tennessee." This might be true, and still the corporation might not have been created under the laws of either of those states, or it might have been only in virtue of the laws of Tennessee of which state the plaintiff is a citizen. The allegations of the amendment, however, amount to an assertion that the company is a corporation and a citizen of the state of Arkansas, and, if admitted, it might be said with much show of reason that this is tantamount to alleging that the company was organized as a corporation under and according to the laws of Arkansas; for in no other way could the corporation be a "citizen" of that state within the meaning of the federal jurisdictional clauses touching controversies or suits of a civil nature "between citizens of dif-

ferent states" article 3, § 2, Const.; section 24, Judicial Code. [1] Still, the corporate character of defendant is neither admitted nor proved here; and according to the controlling decisions an allegation that a corporation is a citizen of a given state is not sufficient to show jurisdiction. La Fayette Ins. Co. v. French, 59 U. S. (18 How.) 404, 405, 15 L. Ed. 451; Muller v. Dows, 94 U. S. 444, 445, 27 L. Ed. 207. See, also, American Sugar Refining Co. v. Johnson, 60 Fed. 503, 511, 9 C. C. A. 110 (C. C. A., 5th Cir.); Atlantic Coast Line Co. v. Whilden, 195 Fed. 263, 115 C. C. A. 254 (C. C. A., 5th Cir.); Parker Washington Co. v. Cramer, 201 Fed. 878, 879, 120 C. C. A. 216 (C. C. A., 7th Cir.); United States v. New York S. S. Co., 216 Fed. 61, 63, 132 C. C. A. 305 (C. C. A., 2d Cir.). [2]

[1] Of course, in a literal sense it was never supposed that a corporation was a citizen, and yet in a federal jurisdictional sense the courts came at last to treat it as a citizen. This development of the law was worked out, as is well known, upon the theory that the members of the corporate body should be conclusively presumed to be citizens of the state in which the corporation was created; and so, under the franchise the members could sue or be sued in the corporate name; and, as was said by Mr. Chief Justice Taney in Ohio & Mississippi R. Co. v. Wheeler, 66 U. S. (1 Black) 286, 296, 17 L. Ed. 130, and by Mr. Justice Gray in Shaw v. Quincy Mining Co., 145 U. S. 444, 451, 12 Sup. Ct. 935, 36 L. Ed. 768, it was upon this presumption that the decision was reached in 1844 in Louisville Railroad Co. v. Letson, 2 How. 497, 557 (11 L. Ed. 353), where the earlier decisions declaring a narrower doctrine were in effect overruled; Mr. Justice Wayne saying: "But there is a broader ground upon which we desire to be understood, upon which we altogether rest our present judgment, although it might be maintained upon the narrower ground already suggested. It is that a corporation created by and doing business in a particular state is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state, as much as a natural person."

In Railroad Co. v. Koontz, 104 U. S. 5, at pages 11, 12 (26 L. Ed. 643), Mr. Chief Justice Waite said: "A corporation, therefore, created by and organized under the laws of a particular state, and having its principal office there, is, under the Constitution and laws, for the purpose of suing and being sued, a citizen of that state. * * * By doing business away from their legal residence they do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad."

And in Shaw v. Quincy Mining Co., supra, 145 U. S. at page 451, 12 Sup. Ct. at page 937 (36 L. Ed. 768). in allusion to the language just quoted, Mr. Justice Gray said: "The same doctrine has been constantly maintained by this court in applying to corporations the judiciary acts, conferring on the Circuit Courts of the United States jurisdiction of suits between citizens of different states."

And it is settled that a corporation cannot be a citizen of any state, except of the state under whose laws it was first created. Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 563, 19 Sup. Ct. 817, 43 L. Ed. 1081; Missouri Pacific Ry. Co. v. Castle, 224 U. S. 541, 546, 32 Sup. Ct. 606, 56 L. Ed. 875; Walters v. Chicago, B. & Q. R. Co. (C. C.) 104 Fed. 377, 380.

[2] It will be observed that we have treated the allegations of jurisdiction both of the declaration and the amendment as though they had been distinctly admitted by defendant. We have done this because, as stated in the opinion, we do not regard those allegations as sufficient to show jurisdiction. The case would be different if the allegations were in proper form and not put in issue by either an appropriate plea or answer. Toledo Traction Co. v. Cameron, 137 Fed. 48, 52–54 (C. C. A., 6th Cir.) 69 C. C. A. 28; Roberts v. Langenbach, 119 Fed. 349, 350, 352 (C. C. A., 6th Cir.) 56 C. C. A. 253; Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725.

[4] What disposition then should be made of the case? If, after verdict and judgment and while the case was in control of the court below, the plaintiff had sought to amend her declaration by appropriate and definite allegations, and to show that the Rock Island Company was in truth a corporation created in accordance with the laws of Arkansas, she would no doubt have been given opportunity to cure the defect in question. Mexican Central Railway v. Duthie, 189 U. S. 76, 77, 23 Sup. Ct. 610, 47 L. Ed. 715. It is true that the Chief Justice said in the course of the opinion in that case that if the petition had remained as it was originally framed, and the case had been carried to the Circuit Court of Appeals, that court "would have been constrained to reverse the judgment and remand the cause for a new trial, with leave to amend"; but the orders of reversal in the cases there referred to seem to have been to remand the causes "for further proceedings," and not in terms for new trial (and see Denny v. Pironi, 141 U. S. 121, 124, 11 Sup. Ct. 966, 35 L. Ed. 657, and citations); and it is not perceived why the reversal of the judgment should necessarily include the setting aside of the verdict. Permitting the verdict to stand in a case like this and reversing the judgment, only to remand the cause with permission to frame and try an issue of fact with respect alone to diversity of citizenship, would no more deprive the defendant of the right of trial by jury than was done in the Duthie Case, just cited (Parker Washington Co. v. Cramer, supra, 201 Fed. 880, 120 C. C. A. 216; Toledo Traction Co. v. Cameron, 137 Fed. 48, 54, 55, 69 C. C. A. 28 [C. C. A., 6th Cir.]; McEldowney v. Card [C. C.] 193 Fed. 475, 483, by Sanford, District Judge); and the trial court could then exercise its powers under section 954 of the Revised Statutes (Comp. St. 1913, § 1591) as completely as the trial court did in the Duthie Case. Such a course as this is sanctioned even in criminal cases, where the sentence is erroneous. Ballew v. United States, 160 U. S. 187, 202, 203, 16 Sup. Ct. 263, 40 L. Ed. 388; Haynes v. United States, 101 Fed. 817, 820, 42 C. C. A. 34 (C. C. A., 8th Cir.); Whitworth v. United States, 114 Fed. 302, 305, 52 C. C. A. 214 (C. C. A., 8th Cir.); Mitchell v. United States, 196 Fed. 874, 878, 116 C. C. A. 436 (C. C. A., 9th Cir.). True, in the instant case no attempt was made by counsel in the court below, and none has been made here, to provide for curing the defect; it scarcely need be said that in such circumstances the defect cannot be cured in this court (Fred Macey Co. v. Macey, 135 Fed. 725, 729, 68 C. C. A. 363 [C. C. A., 6th Cir.]); and we cannot pursue a course here like the one we have this day adopted in La Belle Box Co. v. Stricklin, 218 Fed. 529, 134 C. C. A. 257. We have the impression, however, that the facts will warrant the amendment and show the required diversity; for (a) the assignment of error touching jurisdiction is, as we have seen, based simply upon the absence of proof that the Rock Island "was a nonresident of the state of Tennessee," which of course is entirely consistent with the organization of the company in another state (and see Butterfield v. Miller, 195 Fed. 200, 204, 205, 115 C. C. A. 152 [C. C. A., 6th Cir.]), and (b) in attempting to waive assignments, as before indicated, counsel for defendant frankly state in their brief that:

"After careful consideration the defendant is of the opinion that none of these other assignments are well taken, and will therefore not burden the court with a discussion of them."

We are therefore constrained to believe that the case should be considered upon its merits, with the purpose of avoiding another trial if reversible error is not found and diversity of citizenship in fact existed. Atlantic Coast Line R. Co. v. Whilden, supra, 195 Fed. 263, 115 C. C. A. 254; Atchison, T. & S. F. Ry. Co. v. Gilliland, 193 Fed. 608, 611, 113 C. C. A. 476 (C. C. A., 9th Cir.); Newcomb v. Burbank, 181 Fed. 334, 336, 337, 104 C. C. A. 164 (C. C. A., 2d Cir.); Parker Washington Co. v. Cramer, supra, 201 Fed. 880, 881, 120 C. C. A. 216. We are the more content to adopt this course because defendant appears to have presented its full defense upon the merits, and, upon proper amendment below, will be given opportunity to contest the jurisdictional issue.

2. The Merits.   According to allegations of the declaration and proofs offered, the Missouri & North Arkansas Railroad Company operates a line of railroad between Crosby and Wheatley, Ark., and the Chicago, Rock Island & Pacific Railroad Company a line between Wheatley and Memphis.   Mrs. Stephens, to whom we shall hereafter refer as "plaintiff," purchased of the ticket agent stationed in the depot of the first-named railroad at Crosby a full-fare passenger ticket, entitling the holder to be carried from that place over such first-named road to Wheatley and thence over the Rock Island to Memphis.   Plaintiff was accompanied by her two small children, for whom she purchased a half-fare ticket which otherwise corresponded with her own. The purchases were made April 7, 1912, when a flood was threatened, and plaintiff in consequence inquired of the ticket agent whether she would have "any trouble in getting to Memphis on account of this water," and the agent answered: "Oh, no; you will go right on through."   These tickets were not marked, "Subject to delay"; yet plaintiff was carried only to Wheatley, and was there neglected by defendant and exposed to cold and other discomforts for which the reconvey was allowed.

[5] The complaint made in the amendment to the declaration is contained in two counts.   After setting out in the first count the purchase of the two tickets at Crosby, plaintiff in substance and effect alleged that in such sale and delivery of tickets the agent represented both of the railroad companies; that after purchasing the tickets she boarded the train of the first-named company and was transported to Wheatley, where she was told she could go no further on account of the high water, and to return to Kensett, Ark.; that after spending the night in the depot at Wheatley, which was filthy and also "cold and inadequately heated, and which contained men, all of whom were drunk and using language that was not pleasant to the ear of a lady, and especially to children, she went back to Searcy, Ark."   This count is based upon alleged breach of the contract, and specified injuries suffered in consequence.   The second count is in tort, and alleges that the railroad company (Rock Island) knew of the high water and was issuing daily bulletins warning the public of the height it would reach on the following

day, the 8th of April; that, at the time the ticket was sold to her by the common agent of the two companies, such agent knew that she could not be carried to Memphis, and nevertheless negligently and wantonly sold her a through ticket; that in consequence she sustained the injuries, which are again specifically described. Among the allegations of injury it is stated in each count that the plaintiff suffered from cold and fright, which caused "irregularity of her menses," nervousness, and hysteria, resulting in frequent and serious periods of insomnia and pain. At the close of plaintiff's evidence, defendant moved for a directed verdict. This was overruled, and defendant presented its evidence, which of course was a waiver of any claim of error respecting such denial of the motion.

From the whole evidence it is plain enough that the railroad agent at Crosby, who sold plaintiff her ticket, was authorized to make such sales on behalf of defendant the Rock Island Company, as well as the other company; that the depot at Wheatley was a union station used and maintained by both railroad companies; that the plaintiff and her children were carried over the road of the first company from Crosby to Wheatley without notice or warning that they could not be carried thence over the Rock Island road to Memphis; that the train on which they had been brought to Wheatley continued on its line beyond that place; that plaintiff and her children were so required to leave the train at the depot, the union station mentioned; that plaintiff was there first told, though not by an agent of either of the railroad companies, that neither the regular train nor any other would be run from Wheatley to Memphis and that she with her children would better return on the morning train to Kensett (which seems to be a station in Arkansas near Searcy where the husband was staying). Further, as we understand the testimony, the train carrying plaintiff and her children reached the union depot in Wheatley at about midnight of April 7th, and the plaintiff and her children entered the waiting room of the depot and remained there until about 9 o'clock the next morning, when they returned to Kensett on a train running over the road on which they had been brought to Wheatley. Concededly the depot was unattended during the night by any one representing either of the railroads. The night was cold, and the waiting room in which plaintiff and her children were located was filthy, and, moreover, the room was not heated during any of the time they remained there, and so was exceedingly uncomfortable. Plaintiff and her children (a boy then about 11 years of age, and another child whose age or sex does not appear) were greatly frightened by the conduct of at least one drunken man, and the mother was also suffering from the cold. Plaintiff testified that her monthly period was then in progress, that it was stopped by a cold contracted in this waiting room and had never returned, and that this had caused her much suffering, although she had been in perfect health before and regular in the respect mentioned. It is true that upon plaintiff's leaving the train at Wheatley she was directed to the waiting room by a night watchman of a rice mill close by; that this watchman, having to be absent a short time, returned to the waiting room and found the door locked, but was able to make plaintiff understand that if she would

unlock the door he would procure coal and heat the waiting room for her, or that he would accompany her and the children to a hotel some four blocks distant, or that he would furnish them a comfortable place to sit in the rice mill. Plaintiff declined these offers, because of her state of fright and that of her children, which was first induced by a threatened intrusion of the drunken man mentioned and during the absence of the rice-mill watchman; moreover, she and her son believed that this watchman was drinking, though it appeared at the trial that they were mistaken in this belief; and an additional reason for declining to accompany the watchman to the hotel was that she had not sufficient money with her to pay the expense, in addition to the railroad fare in case of her return to Searcy. This watchman was the person who had told plaintiff upon her arrival that no train would leave for Memphis, but she had been informed by another person that she could get a train out that night (as we understand for Memphis). However, she was not able to have these conflicting statements as to an outgoing train officially cleared up until the next morning.

Defendant moved for an instructed verdict at the close of all the evidence, which was overruled. It also presented certain requests that were denied. It reserved exceptions and assigned errors to these rulings, but reserved no exception to the charge. The court gave instructions later upon inquiries made by the jury, and here again defendant reserved no exception. The first assignment relied on concerns the overruling of defendant's last motion to direct a verdict. The theory of this assignment is threefold: (1) That while the basis of the first count is an alleged breach of the contract of carriage, the court withdrew the question from the jury, and submitted as questions of fact, whether plaintiff became a passenger of the Rock Island by presenting herself with that purpose at its depot in Wheatley, and whether under the circumstances she acted with reasonable prudence in remaining in the depot the rest of the night; and, say counsel, since the declaration nowhere charges that "the Rock Island maintained its depot at Wheatley in a negligent, improper or careless manner," the charge proceeded upon a theory not sustained by the pleadings. (2) That plaintiff cannot recover as a passenger of the Rock Island, because, upon receiving notice at Wheatley that no train would leave for Memphis, she ceased to be a passenger, even though it be held that she was a passenger up to that time; the Rock Island in no event owing her any duty further than to allow her a reasonable time to leave the premises. (3) That if plaintiff was a passenger of the Rock Island, then, as a matter of law, she did not have the right to use the depot except for a reasonable period before the regular time for departure of the train (3:25 a. m.); and that defendant certainly owed her no duty for the portion of the night succeeding that time.

[8-9] It ought to be sufficient to say of the first, if not also of the second and third, of these claims of error in the charge, that a motion to direct is addressed to the condition of the case at the close of the evidence, and not to errors in the charge subsequently delivered to the jury; and this is accentuated here by the fact that at the time the charge was given it was satisfactory to the defendant. Further,

these contentions are without merit. There was no occasion to submit to the jury any question of fact, touching either plaintiff's purchase of the ticket at Crosby or the failure of the Rock Island to complete the performance of the contract of carriage; for those facts were to all intents and purposes admitted at the trial. While it may be true that the declaration as amended was open to a demand for specifications concerning the acts and omissions of the Rock Island, still the allegations were sufficient fairly to advise the company of the nature of the testimony that would be offered at the trial; no such demand was made, and no claim of surprise was presented at the trial respecting the testimony offered, except in one respect as to which error is not assigned. As it seems to us therefore learned counsel misconceive the real scope and effect of the declaration, and also ignore the legal duty resting upon the Rock Island, when they urge that it was error to receive evidence tending to show negligence in defendant or that there is a variance between the facts proved and the amended declaration. The other two features of error claimed under the first assignment overlook the legal effect of the sale and delivery at Crosby of plaintiff's through ticket to Memphis. The Rock Island could not at once concede the rightful sale of that ticket and discharge itself of all obligations thereunder by simply deserting its depot at Wheatley, upon the theory that any person who might arrive there, as plaintiff did, with a ticket like the one here, would be entitled to remain only a reasonably sufficient time to leave the premises; nor can the Rock Island rightfully insist that the trial court was bound to charge the jury, as matter of law, that plaintiff could not stay at the depot for the portion of the night remaining after her arrival at Wheatley. It is not enough to say that the presence of an extraordinary flood justified either of these contentions. Conceding that the existence of the flood justified the Rock Island in withdrawing its train for Memphis, it does not follow that it was also justified in failing to furnish plaintiff, at least for a reasonable time in view of all the circumstances, with facilities for her accommodation and safety in the depot at Wheatley. The company was chargeable with notice that one or more persons, holding through tickets, might be brought there on the other train in ignorance of the withdrawal of the regular train for Memphis. This results from the conceded authority of the agent at Crosby to sell the through ticket to plaintiff; for it in effect concedes an agency in the connecting line, the Missouri & North Arkansas Railroad Company, to cause such tickets to be sold for through passage of the purchasers to Memphis on any of the passenger trains of that road. In saying this we are mindful of the fact that the form of the ticket in question (that is, whether made up of coupons or not) is not shown; but it is not claimed, as it could not well be, that the form is important in a case like this. Young v. Pennsylvania R. Co., 115 Pa. 112, 118, 7 Atl. 741; Railway v. Loftis, 72 Ohio St. 288, 299, 74 N. E. 179, 106 Am. St. Rep. 597, 3 Ann. Cas. 3; C. & A. R. R. Co. v. Mulford, 162 Ill. 522, 528, 44 N. E. 861, 35 L. R. A. 599; Pennsylvania R. Co. v. Connell, 112 Ill. 295, 302; Milnor v. N. H. R. R. Co., 53 N. Y. 363, 368; Moore v. M., K. & C. Ry. Co., 18 Tex. Civ. App. 561, 562, 45 S. W. 609; Kansas City, Mem-

phis & Birmingham R. Co. v. Foster, 134 Ala. 244, 255, 256, 32 South. 773, 92 Am. St. Rep. 25; 2 Hutch. on Carrriers (3d Ed.) § 1049, pp. 1209, 1210; 2 Redf. on Ry. (6th Ed.) § 201, pp. 313, 314, 315. We have seen that plaintiff was carried to the depot at Wheatley in ignorance of the withdrawal of the regular train for Memphis. We do not overlook the testimony of the Rock Island trainmaster that a telegram was sent to the Wheatley operator at 8:30 a. m. of the 7th of April, giving directions on account of the flood conditions to discourage all passenger business, to sell tickets "Subject to delay," and to explain to passengers that should they get water-bound they would be "at their own expense"; but neither the point from which the telegram was sent nor the time it was received at Wheatley is shown. It is not pretended that plaintiff was advised of this telegram, and it cannot be that she is responsible for the failure of either the Rock Island or its connecting carrier agent seasonably to notify her of these conditions.

[**10, 11**] Thus plaintiff reached defendant's depot at midnight in possession of a through ticket purchased at the beginning of her trip, with the implied consent of defendant, and we are asked to hold, as matter of law merely, that she was not a passenger when she entered the depot; and, if she was, that she lost her rights in that respect by staying there too long. We are not disposed to believe that the law is so extreme and harsh as to sanction any such rule. That would deny to plaintiff, as also defendant, the right to have the jury pass upon the facts and circumstances which brought about the conditions prevailing at the Wheatley depot. Was plaintiff in fault, or was defendant, for the confusing plight in which plaintiff evidently found herself upon her arrival at this depot? In view of the court's charge and the verdict, we are not called upon to determine whether plaintiff was a passenger of the Rock Island when she entered the waiting room of the depot. Her intent in that behalf is manifest, and, with her rightful purchase and possession of the Memphis railroad ticket, her right to treatment as a passenger would as matter of law be difficult to refute. Whether the conditions justified her in remaining in the waiting room the rest of the night was clearly a question for the jury, under appropriate instructions. Counsel for defendant frankly admit that after diligent search they have been unable to find apposite authority to sustain their contention. The ultimate and controlling issue submitted to the jury in substance was whether, in view of the scheduled departure of the Memphis train, the time when plaintiff entered the depot. and the length of time she subsequently remained there, were or were not under the facts and circumstances of the case reasonable. The trial court made plaintiff's relation as a passenger of defendant at the time she entered the depot depend upon the jury's finding on this issue; charging the jury that if she then was a passenger the company was under duty to exercise "reasonable care and diligence in furnishing her with a reasonably safe and comfortable depot * * * until the departure of the train for which she was waiting." These views met with no exception and certainly were as favorable to defendant as on any rational theory it was entitled to.

218 F.—35

The statute law of Arkansas imposes upon railroad companies running trains at night the duty to keep their waiting rooms "open both day and night for the free and unrestricted use * * * of their passengers," and also at proper times and seasons to keep such rooms clean and "comfortably heated." Kirby Dig. of Stat. of Ark., § 6634, p. 1379. The rule of this statute, if not of the act itself (Acts of Ark. 1899, pp. 152, 153), was upheld in St. Louis, I. M. & S. Ry. Co. v. Wilson, 70 Ark. 136, 140, 66 S. W. 661, 91 Am. St. Rep. 74, and the validity of the statute was again recognized in St. Louis, I. M. & S. Railway Co. v. Laurence, 106 Ark. 544, 547, 153 S. W. 799. Apart from this statute, we think there was a common-law duty resting upon these companies to provide plaintiff with reasonable accommodations at this station. In McDonald v. Chicago Northwestern Railroad Co., 26 Iowa, 124, 138 (95 Am. Dec. 114), Dillon, C. J., having occasion to consider the subject, said:

"But I have no hesitation in saying that, without any statute enacting it, there is a common-law duty on these companies to provide reasonable accommodations at stations for the passengers who are invited and expected to travel on their roads. See Caterham R. Co. v. London R. Co., 87 Eng. C. L. 410."

See, also, Draper v. Evansville, etc., R. Co., 165 Ind. 117, 120, 74 N. E. 889, 6 Ann. Cas. 569; St. Louis I. M. & S. Ry. Co. v. Wilson, supra, 70 Ark. 140, 66 S. W. 661, 91 Am. St. Rep. 74; Boothby v. Railway, 66 N. H. 342, 344, 34 Atl. 157; Grimes v. Pennsylvania Co. (C. C.) 36 Fed. 72, 74; Texas & Pacific Ry. Co. v. Cornelius, 10 Tex. Civ. App. 125, 129, 30 S. W. 720; St. Louis Southwestern Ry. Co. of Texas v. Foster (Tex. Civ. App.) 112 S. W. 797, 799; 2 Hutch. on Car. (3d Ed.) § 931, p. 1047.

The next assignment relied on concerns a request presented for the purpose of submitting to the jury a question discussed in the second ground of the first assignment, and we have already said enough of the first assignment to disclose our views upon the second.

[12] The last assignment is a challenge of the competency of a question put to a physician as an expert, for the purpose of eliciting his opinion whether the conditions under which plaintiff suffered in the waiting room would cause the nervousness and irregularity in menstrual flow of which complaint was made. The objection is not that there was an absence of evidence tending to prove any of the facts hypothetically stated in the question, or that the statement was incomplete or calculated to misinform or mislead; it is that the facts recited in the question should have been submitted to the jury for its solution alone. This ignores a cardinal principle of opinion evidence; the opinion only of a competent expert would be of any value in such a matter; and the object of introducing the opinion was to inform the jury upon a subject not familiar to the layman. We do not see any ground for error in the question. Marbury v. Illinois Cent. R. Co., 176 Fed. 9, 14, 15, 99 C. C. A. 483 (C. C. A., 6th Cir.); Benjamin v. Holyoke Street Ry. Co., 160 Mass. 3, 5, 35 N. E. 95, 39 Am. St. Rep. 446; McKeon v. Chicago, Milwaukee & St. Paul R. Co., 94 Wis. 477, 483, 69 N. W. 175, 35 L. R. A. 252, 59 Am. St. Rep. 910.

The judgment, not the verdict, is reversed, without costs to either side. The cause is remanded for the purpose of determining the question of jurisdiction; if, under leave of the court below, plaintiff shall properly amend the declaration and establish jurisdiction in that court, the judgment will be re-entered; if jurisdiction be not shown, the cause will be dismissed.