### FENTRESS COAL & COKE CO. v. ELMORE.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1917. On Motion for Rehearing, April 13, 1917.)

No. 2873.

1. MASTER AND SERVANT ⬤⟶276(3)—INJURIES TO SERVANT—QUESTION FOR JURY —PROXIMATE CAUSE OF ACCIDENT.

In an action for injuries to a mine employé, caused by a collision between the car on which he was riding and a car which had become uncoupled from it and derailed, evidence *held* sufficient to warrant the jury in finding that the uncoupling of the car was the proximate cause of the derailment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

2. MASTER AND SERVANT ⬤⟶278(10)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE—DEFECTIVE APPLIANCES.

In an action for injuries to a mine employé, evidence *held* sufficient to warrant the jury in finding that the coupling hook on a car was defective, and had been so long enough to raise a duty on the part of the employer to repair it, though there was no direct evidence of such defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 964.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** MASTER AND SERVANT ☞289(22)—INJURIES TO SERVANT—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a mine employé, working as brakeman on the mine cars, evidence *held* not to show as a matter of law that plaintiff was contributorily negligent in failing to discover a defective coupling hook on one of the cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1113.]

On Motion for Rehearing.

**4.** COURTS ☞280—JURISDICTION—PROOF—ADMITTED ALLEGATIONS.

Where the allegations of the declaration, not put in issue by answer, are sufficient to show jurisdiction of the federal court, no proof to establish such jurisdiction is necessary.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818.]

**5.** REMOVAL OF CAUSES ☞86(3)—DIVERSITY OF CITIZENSHIP—PETITION—CITIZENSHIP OF CORPORATION.

An allegation that defendant corporation was a citizen of a state other than the state of plaintiff's citizenship, residing in that state, with no allegation that it was organized under the laws of that state, is insufficient to sustain the federal court's jurisdiction after removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 171.]

**6.** REMOVAL OF CAUSES ☞103 — REMAND — AMENDMENT — AMENDMENT BY PLAINTIFF.

Where an action against a corporation was removed to the federal court by defendant, but the petition was defective for failing to allege that the corporation was organized under the laws of the state of which it claimed to be a citizen, which objection was raised by defendant after judgment for plaintiff had been rendered, the defect may be cured by amendment, and the judgment, but not the verdict, will be reversed, and the cause remanded, with directions to re-enter the judgment, if the plaintiff amends his declaration and establishes the organization of the corporation.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 221.]

In Error to the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Action by Beecher Elmore against the Fentress Coal & Coke Company. Judgment for the plaintiff, and defendant brings error. Affirmed, but on motion for rehearing, affirmance set aside, judgment, but not verdict, reversed, and cause remanded for determination as to jurisdiction.

W. B. Miller, of Chattanooga, Tenn., for plaintiff in error.

J. F. McNutt, of Rockwood, Tenn., and J. T. Wheeler, of Jamestown, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

DENISON, Circuit Judge.   In the court below Elmore recovered a judgment for personal injuries received while employed in defendant's mine. The case comes here upon the claims that there was nothing tending to show defendant's proximate negligence and that contributory negligence conclusively appeared.

The record indicates that the case came into the court below through removal from the state court, but the removal proceedings are not

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

included in the transcript, and the transcript as filed in this court does not show federal jurisdiction. Since less. than the whole record is here, and since all parties have assumed—and still do—that there was jurisdiction, we feel justified in concluding that the omitted proceedings sufficiently disclosed a diverse citizenship.

The question of negligence arises in this way: Elmore was doing, with reference to mine cars, the work done by brakemen and switchmen upon a surface road. The mine cars were small and short, and were coupled together by a hook on one of them engaging with an eye or link, carried by a chain, on the other. Two styles of hooks were in use: The later style, intended for the newer and heavier type of cars, was heavy and strong and made of cast iron or steel; the older style (in process of being supplanted, but still in considerable use) was of wrought iron, and of much lighter construction. In this style the normal hook was strong enough, and was sufficiently recurved, so that it would hold the link upon the hook in the exigencies of use; but as the hook became worn and weaker it tended, in use, to pull out straighter, so as to have merely a single, right-angled bend, in which condition it was unsafe, because so easily disengaged from the link by the shocks it naturally received.

While Elmore was lawfully riding on the tenth car of a train of such mining cars, which was coasting downgrade in the mine, the car on which he was riding became uncoupled from the one ahead, and the cut of nine cars ahead ran on uncontrolled; the last one of the cut was derailed, his car ran into it, and he was thrown off and hurt. Plaintiff's theory of negligence is that the uncoupling happened because the hook was worn and straightened.

[1] It is first urged that a defective hook could not have caused the injury herein, because the uncoupling of the hook and link on the rear of the rear car would have no tendency to derail that car. This would seem to be true on an ordinary train, but not so as to a train of very short cars running away downhill, on a rough track. In such a situation the rear car, deprived of the steadying influence of a coupled-up following car, would be distinctly likely to be snapped off the track, like the cracker of a whip. It cannot be denied that it was within the province of the jury to find that the uncoupling, if it occurred, was the proximate cause of the derailment.

[2] It is next said that there is no evidence sufficiently tending to show that the uncoupling happened because of a defective hook, or that this particular hook was defective. There is no direct testimony to this effect; so the question is whether all the facts and circumstances are enough to justify a jury in concluding, as this jury did, that this hook was defective. When these facts and circumstances are collated it is seen that the defendant was customarily using these hooks, which customarily became defective; that the cars of this type were continually being sent to the repair shop to have the hooks repaired or rebent; that one of these hooks, so straightened that its use in that form was conceded to be negligent, was found upon one of the cars two or three days after the accident; that shortly before the accident an employé represented to the superintendent that a group

of these cars had their hooks in such condition that they ought to go to the shop for repairs, and that the superintendent gave instructions to use them a few trips more before so doing; and that no other reasonably probable cause for the uncoupling is suggested by the record. Taking all these things together, we think they furnish legal justification for a finding of the jury that the hook on this car was sufficiently defective, and had been so long enough, to have raised on the part of defendant the duty of such repair as was necessary to make it safe. We classify this case with our previous holdings in such cases as Felton v. Newport, 105 Fed. 332, 44 C. C. A. 530, and Pittsburgh Co. v. Scherer, 205 Fed. 356, 123 C. C. A. 484, rather than with such cases as Smith v. I. C. R. R., 200 Fed. 553, 119 C. C. A. 33, and Richards v. Mulford, 236 Fed. 677, —— C. C. A. ——.

[3] There remains the question of contributory negligence, which in Tennessee is still a bar to recovery by plaintiff.

It is said that Elmore's duties were such that upon him rested the primary duty of inspection, that the company would know of the unsafe condition of such hooks only through reports made by Elmore, and that his negligence in not reporting the defect, but in continuing to use the car, directly contributed to the result. On the other hand, it is said that he had no duty of inspection to such an extent as to supplant the employer's primary duty, and that his whole work with the mine cars was underground and in the dark, so that he would not naturally have discovered this defective hook, but would have learned of it only by chance. In this connection a controversy has arisen whether Elmore's work was or was not wholly underground, and. whether, when he says that he gathered these cars together and helped make up this train "about two miles from the mouth of the mine," he means two miles inside the mouth or two miles outside the mouth. On this subject the record brought to this court is uncertain and confusing. The question of contributory negligence was submitted to the jury under a charge to which neither party excepted. We have examined the record with special reference to this phase of the case; and when we give due effect to the fact that the superintendent in authority over Elmore regarded the cars which were in bad condition in this respect as still safe for further use, and to the uncertainty as to what knowledge Elmore would naturally have acquired, and pay respect to the rule that the burden is on defendant to establish this defense, we cannot say that his negligence in continuing to work around and with this car conclusively appears. Tennessee Co. v. Gaddy (C. C. A. 6) 207 Fed. 297, 299, 125 C. C. A. 41.

It follows that the judgment must be affirmed.

### On Motion for Rehearing.

The opinion was erroneous in stating that all parties continued to assume that there was jurisdiction, and that the removal proceedings were not included in the transcript. It overlooked the fact that the removal proceedings had been added by a supplemental transcript, and that plaintiff in error's brief challenged the jurisdiction of the court below. That subject must therefore be considered.

Plaintiff's declaration in the state court said nothing on the subject of the residence or citizenship of either party; it did allege that defendant was "a body politic and corporate." Defendant's removal petition alleged that, both at the time of commencing suit and filing of removal petition, the plaintiff was a citizen of Tennessee, and the defendant was "a citizen of the state of Pennsylvania and of no other state, residing in the city of Philadelphia, in said state."

The answer, later filed, tendered no issue upon the claim of the declaration that defendant was a body politic and corporate; and, indeed, the form of the petition for removal is an implied admission of defendant's corporate character.

[4] If the facts thus established by the pleadings, and not requiring proof, were sufficient to show jurisdiction, it would not be material that there was no proof. See note 2, Chicago Ry. Co. v. Stephens (C. C. A. 6) 218 Fed. 535, 539, 134 C. C. A. 263.

[5] However, the pleadings contain no allegation, and the record brought to this court contains no proof, that the defendant corporation was organized under the laws of Pennsylvania, and this has been held to be a fatal defect. Lafayette Co. v. French, 59 U. S. (18 How.) 404, 405, 15 L. Ed. 451; Chicago Ry. Co. v. Stephens, supra, 218 Fed. at page 539, 134 C. C. A. 263.

This case is like La Belle Co. v. Stricklin (C. C. A. 6) 218 Fed. 529, 533, 134 C. C. A. 257, 261, in that the defect pointed out is of a highly artificial character, and (for it is not to be supposed that defendant intended a trick) consists in an accidental omission or mistake by defendant in its petition for removal. Except that in the La Belle Case plaintiff would have lost three years, if the case had been sent back to the state court, while in the present case in that event plaintiff will lose six years, the following quotation from what is said in the La Belle Case is applicable here:

"That, for such defect, the judgment which has been recovered should be reversed and the case remanded to the state court, must always be unfortunate; but that, in the present case, 'Stricklin, after commencing his suit in the proper court, after having been taken against his will into the federal court, spent a year in reaching trial, gone through the trial, and recovered a judgment for an amount which was certainly not excessive, if his story was true, and then having lost two years more in getting the case to its present position—that after all this, and after continual acquiescence in the jurisdiction of the federal court, and without any affirmative reason to 'doubt that the facts existed which gave the jurisdiction, he should be sent back to begin over again, because the other side made an imperfect allegation, is a result not to be reached, unless imperatively required by settled rules."

There are several matters, which perhaps might serve to distinguish the present case from the strict rule of Lafayette v. French. We observe that the petition for removal in the present case alleges not only that defendant is a citizen of Pennsylvania, but that it is not a citizen of any other state, thus removing the contingency that it might have been organized also under the laws of Tennessee. We observe further that while the present bill of exceptions states that it contains all the evidence, yet since the present practice requires the testimony to be in narrative form, and forbids the insertion in the

bill of exceptions of any evidence not bearing upon the assignments of error, which must be presented to the District Judge when he settles the bill, and since the present assignments of error made no mention of this subject, the parties and the District Judge might well have omitted from the bill of exceptions all proof given on the trial pertaining to the subject of diverse citizenship; and there would be distinctly better ground than there used to be for presuming that the necessary proof was in fact given.

[6] However, we think it not necessary to pass upon these possible distinctions, but regard it as the better practice to follow the rule which was approved by this court in Toledo Traction Co. v. Cameron, 137 Fed. 48, 54, 69 C. C. A. 28, and applied in Chicago Ry. Co. v. Stephens, supra, 218 Fed. 547, 134 C. C. A. 263, and practically approved by the Supreme Court in Mexican Ry. v. Duthie, 189 U. S. 76, 23 Sup. Ct. 610, 47 L. Ed. 715. See, also, McEldowney v. Card (D. C.) 193 Fed. 475, 483. The defect in the record is capable of being cured by amendment, in spite of the fact that the case came into the court below by removal from a state court. La Belle Co. v. Stricklin, supra, 218 Fed. 533, 534, 134 C. C. A. 257; Rife v. Lumber Underwriters (C. C. A. 6) 204 Fed. 34, 36, 122 C. C. A. 346.

The application for rehearing also points out that the opinion inaccurately stated certain details of the injury; but we find no error material to the result.

On its merits the application is denied. The order of affirmance will be set aside, and the judgment below, but not the verdict, is reversed, without costs of this court to either party; and the case will be remanded for determining the question of jurisdiction. If, in manner to be determined by the court below, plaintiff shall properly amend his declaration and establish the necessary diverse citizenship existing when the suit was commenced and when the removal was made the judgment will be re-entered; if jurisdiction be not thus shown the case will be remanded to the state court.[1]

---

[1] This case had been removed from the state court before the passage of the Act of March 3, 1915 (section 274c, Judicial Code [Comp. St. 1916, § 1251c]). In view of the conclusions reached by the opinion, it is unnecessary to consider whether that statute reaches this case.