### CHICAGO & A. R. CO. v. ALLEN.

(Circuit Court of Appeals, Seventh Circuit. November 26, 1917. Rehearing Denied January 22, 1918.)

No. 2535.

1. COURTS ☞37—JURISDICTION OF FEDERAL COURTS—ACTION UNDER EMPLOYERS' LIABILITY ACT.

    Whether a federal court has jurisdiction of an action by a railroad employé for an injury received in the course of his employment, as one arising under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1916, §§ 8657–8665), depends upon whether the employé at the time of his injury was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it, and this is a question of fact. Jurisdiction cannot be conferred on the court by a stipulation or admission by defendant that plaintiff was so engaged, irrespective of the facts.

2. APPEAL AND ERROR ☞1178(6)—CIRCUIT COURT OF APPEALS—REVIEW—JURISDICTION.

    A general verdict, returned on trial of an action which was without reversible error, may be permitted to stand pending an inquiry and determination by the trial court on the question of its jurisdiction.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by James Allen against the Chicago & Alton Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

Edward W. Everett, of Chicago, Ill., for plaintiff in error.

George C. Otto, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Plaintiff in error, herein called the defendant, attacks the jurisdiction of the federal court. It asserts that defendant in error, herein called the plaintiff, was not engaged in interstate commerce at the time he received his injury, and, no other ground of federal court jurisdiction appearing, the action should have been dismissed. The facts in respect to the character of plaintiff's employment are disclosed, in part, by a stipulation, which is as follows:

"It is stipulated by and between the parties to the above-entitled cause * * * that prior to and on the 25th day of September, A. D. 1912, and at the time plaintiff claims to have been injured, the defendant owned, was possessed of, and was operating a railroad and railroad shops, railroad cars, locomotive engines, and rolling stock, tools, appliances, machinery, and conveniences, and in connection therewith was during all said time engaged in intrastate and interstate commerce, and that said plaintiff was, at the time he claims to have been injured, in the employ of said defendant, and as such employé at the time he claims to have been injured was engaged in working on or about and repairing an engine which belonged to defendant, which engine prior to the time plaintiff claims to have been injured had for a long time been used by it indiscriminately in both interstate and intrastate commerce, and which engine was at the time plaintiff claims to have been injured intended by said defendant to be used thereafter in interstate and intrastate commerce as occasion might require, and which engine was shortly after the time plaintiff claims to have been injured used by said defendant in both interstate and intrastate commerce."

Defendant also showed that the engine was taken to the shops on the 8th day of July, and was removed on the 28th day of September; that the repairs consisted of a general overhauling of the engine. Defendant offered to show that the engine was hauled from Springfield to Bloomington as a dead engine on July 2, 1912; that it lay in the yards at Bloomington for six days, when it was taken to the shops for general and extended repairs, and remained in the shops until September 28th, when it was ready for use; that prior to June 23, 1912, it had been used in drawing a local passenger train within the state of Illinois and not beyond; that after September 28th, and on October 2d, it was put in use at Taluca drawing a local passenger train, which did not originate in or go beyond the state of Illinois. The court refused to receive such testimony, on the ground that defendant was bound by a letter corroborating a statement made, in open court, prior to the date of the stipulation, the contents of which letter were:

"Pursuant to conversation had before Judge Carpenter recently, we agree that when this case is tried we will admit in open court that Allen, when injured, was engaged in interstate commerce, and that his rights to recover against the defendant and its liabilities to him are controlled exclusively by

the federal Employers' Liability Act. In other words, we will make no contention that, when injured, he was engaged in merely intrastate commerce employment."

Plaintiff early sought a bill of discovery, and the statement in open court and the letter referred to came as a result of plaintiff's endeavors to obtain such discovery.

[1] Upon this record, we are confronted by the question: Did the court have jurisdiction of the case? It is elementary that the facts showing the jurisdiction of the federal court must affirmatively appear. The party who attacks the court's jurisdiction is not required to establish the negative. If the record fails to show the necessary jurisdictional facts, the action must be dismissed. It is also elementary that a federal court does not acquire jurisdiction by consent of parties. Nor will a stipulation as to facts, which are not "the facts in the case," control. True, these facts may be established by stipulation, as well as by admissions, or by any other competent testimony. But it is the facts, and not conclusions, upon which jurisdiction must depend.

The offer of the letter written prior to the stipulation was not accepted by the plaintiff, but was rejected by him, with a full appreciation of the applicability of these rules. While we might well conclude that the offer of the letter had no bearing in the present case, because never accepted, and because the agreement of the parties was immediately thereafter merged into the written stipulation, we are also required to reject it, if the record shows the plaintiff was in fact not engaged in interstate commerce at the time he received his injuries. Ignoring the significance of the rejected testimony offered by the defendant, and confining our attention entirely to the stipulation, we find therefrom that defendant was a carrier engaged in interstate commerce, and plaintiff was its employé at the time he received the injury. The controverted issue for determination then is: Does the testimony show plaintiff to have been engaged in interstate commerce at the time he was repairing the engine and was hurt?

The true test of employment in such commerce in the sense intended is: Was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? Shanks v. Del., L. & W. R. R. Co., 239 U. S. 556, 558, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1915C, 797; C., B. & Q. R. R. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941. What is "interstate transportation or work so closely related to it as to be practically a part of it," has been the subject of inquiry in many cases. See Pederson v. Del., L. & W. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Ill. Cent. R. R. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Del., L. & W. R. R. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397; Shanks v. Del., L. & W. R. R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436; L. R. A. 1916C, 797; Seaboard Air Line Co. v. Koennecke, 239 U. S. 352, 36 Sup. Ct. 126, 60 L. Ed. 324; C., B. & Q. R. R. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; L. & N. R. R. Co. v.

Parker, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119; Ill. Cent. R. R. v. Peery, 242 U. S. 292, 37 Sup. Ct. 122, 61 L. Ed. 309; Erie R. R. v. Welsh, 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319; M. & St. L. R. R. v. Nash, 242 U. S. 619, 37 Sup. Ct. 239, 61 L. Ed. 531; M. & St. L. R. R. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358; N. Y. Cent. R. R. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Raymond v. C., M. & St. P. R. R., 243 U. S. 43, 37 Sup. Ct. 268, 61 L. Ed. 583.

Defendant asserts confidently that the facts in this case are governed by the decision in the case of M. & St. L. R. R. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358; while plaintiff, with equal confidence, relies upon Pedersen v. Del., L. & W. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. In the case of M. & St. L. R. R. v. Winters, supra, the court said:

> "The plaintiff was making repairs upon an engine. This engine 'had been used in the hauling of freight trains over defendant's line, * * * which freight trains hauled both intrastate and interstate commerce, and * * * it was so used after the plaintiff's injury.' The last time before the injury on which the engine was used was on October 18th, when it pulled a freight train into Marshalltown, and it was used again on October 21st, after the accident, to pull a freight train out from the same place. That is all that we have, and is not sufficient to bring the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

We see no escape from the language of this decision. It clearly fits the case in hand, irrespective of defendant's testimony supplementing the stipulation or defendant's offered but rejected testimony. We are convinced that the necessary jurisdictional facts not only do not appear, but a situation is disclosed showing affirmatively that plaintiff was not engaged in interstate commerce at the time of the injury. The rule may be, and doubtless is, hard to apply in all cases, and unfortunate results attend its misapplication; but we are not permitted to digress therefrom because of that fact. It must be obvious to all who have studied this question that the difficulty lies, not in the rule, but in the facts which in many cases make the solution of the question extremely difficult.

The case of Pedersen v. Del., L. & W. R. R., supra, is distinguished by the language of the foregoing opinion. In that case Pedersen, an ironworker, was employed by the carrier in "alteration and repair" of some of its bridges and tracks in New Jersey, and at the time of the injury was engaged with another employé in carrying, from a tool car to the bridge, some bolts which were to be used that night in repairing the bridge; the repair consisting of removing an existing girder and inserting a new one. While so carrying the bolts or rivets, plaintiff was injured by a passing interstate train. The bridge was

used in interstate and intrastate commerce. A bridge, unlike the engine in the instant case, is permanently devoted to interstate traffic, and, while used in connection with intrastate commerce, it does not thereby lose its character as an instrumentality of interstate commerce. An engine might be used as an instrumentality of intrastate commerce, or it might be used as an instrumentality of interstate commerce. The basic difference between the engine and the bridge as instruments of commerce lies in the fact that the bridge at all times is an instrument in interstate commerce, while the engine may not be an instrument of interstate commerce. In fact, we conclude from the record now before us that, at the time plaintiff received his injuries, the engine was not an instrument of interstate commerce.

It should be borne in mind that in all these cases the party claiming the federal court has jurisdiction carries the burden of proving the facts which alone confer jurisdiction. Unless the stipulation affirmatively discloses the existence of these facts, the action must be dismissed. If the testimony received on the trial in this case, supplementing the stipulation, and which showed the engine was taken to the shop for a general overhauling on July 8th, and there remained until September 28th, be considered, the conclusion we draw from the facts appearing in the stipulation is greatly strengthened.

We find nothing in the record to support plaintiff's claim that defendant should be estopped from questioning the court's jurisdiction. The letter and the offer made in open court before the stipulation was signed were rejected by plaintiff, who sought and secured the above-quoted stipulation. Moreover, this court cannot accept any offer, stipulation, or admission made to confer jurisdiction when the real facts dispute the offer, stipulation, or admission. Minnesota v. Northern Securities Co., 194 U. S. 62, 24 Sup. Ct. 598, 48 L. Ed. 870; Thomas v. Board of Trustees, 195 U. S. 207, 25 Sup. Ct. 24, 49 L. Ed. 160; United States Envelope Co. v. Trans. Co. (D. C.) 229 Fed. 579.

Plaintiff contends, however, that the evidence showing the date the engine went to and came from the shops, as well as the nature of the repair work done upon it, came from the lips of a witness who was not qualified to speak, and he further contends that he was misled by the letter and offer, heretofore referred to, and that, if given the opportunity, he will prove that the engine upon which plaintiff was working at the time he received his injuries was an instrument of interstate commerce. Under the circumstances of this case, and particularly in view of the claim, seriously and confidently made, by counsel for plaintiff, that, if given an opportunity to establish the facts necessary to confer jurisdiction upon the court, he will be able to do so, we feel justified in reversing the judgment, with directions to the trial court to permit both parties to offer all the competent evidence they may produce bearing upon this issue.

[2] It does not follow, however, that a new trial upon all issues should be granted. Whether the verdict will stand pending the inquiry by the trial court into the facts bearing upon this issue depends upon the absence of other reversible error on the trial of this case.

Grand Trunk Western R. R. v. Reddick, 160 Fed. 898, 88 C. C. A. 80; Parker-Washington Co. v. Cramer, 201 Fed. 878, 120 C. C. A. 216; Alexandria Paper Co. v. C., C., C. & St. L. R. R., 246 Fed. 122, —— C. C. A. ——, decided by this court in this term and session.

Did the court, assuming it had jurisdiction of the action, commit error on the trial? Defendant's counsel complains because of the instructions of the court, one of which reads as follows:

"The court instructs you that it was the duty of the defendant to provide for the plaintiff a safe place in which to work; *and the plaintiff did not assume the risk of some one on those premises, in the employ of the defendant, pushing a piece of metal weighing from 25 to 70 pounds over the side of the pit.*"

The criticism of the italicized words is based on the assumption that the court instructed the jury that:

"An employé is not held to assume the risk of a negligent act of a fellow servant."

The learned trial judge was, of course, speaking only in reference to the facts in the instant case. So limited and so restricted, we think the court was not in error in charging the jury as a matter of law that plaintiff did not assume the risk arising out of the particular negligence of defendant's employé, relied on in this case.

Other criticisms of the instructions are made, but for want of a proper exception they cannot be considered.

Complaint is also made because the verdict is excessive. The trial judge was in a far better position than are we to weigh the testimony in this regard and to pass upon the credibility of the witnesses. If plaintiff's injuries extended to the back and the spinal column, and he was totally incapacitated for the period testified to by him, we would not be justified in declaring the award excessive. The judge, who heard and saw the witnesses, reduced the verdict by a substantial sum. We cannot say that the verdict as reduced is excessive.

Judgment is reversed, with directions to the trial court to grant to the parties a trial by jury, unless the jury be waived, upon this single issue, Was plaintiff engaged in interstate commerce at the time he received his injuries? and to dismiss the action without prejudice, at plaintiff's costs, if it be found that plaintiff was not engaged in interstate commerce at the time he received his injuries, and to enter judgment upon the verdict in case this issue be determined in the affirmative.