## WARD et ux. v. MORROW.

(Circuit Court of Appeals, Eighth Circuit. October 27, 1926.)

No. 7295.

**1. Courts ⟨⟩322(2).**

Complaint alleging diversity of residence of plaintiff and defendants was insufficient to show diversity of citizenship.

**2. Courts ⟨⟩322(5).**

Evidence as to citizenship of parties *held* insufficient to show diversity authorizing court to permit amendment, under Rev. St. § 954 (Comp. St. § 1591), to conform to proofs.

**3. Courts ⟨⟩324.**

Diversity of citizenship may be raised by motion to dismiss.

**4. Courts ⟨⟩406(1).**

Circuit Court of Appeals must consider claim that pleading and proof do not show diversity of citizenship, though question is not argued, and attempt is made to waive assignments of error raising it.

**5. Courts ⟨⟩280.**

Federal court's jurisdiction cannot be acquired by consent, nor be presumed, but must appear on face of record.

**6. Courts ⟨⟩406(2).**

Under Judicial Code, § 274c (Comp. St. § 1251c), Circuit Court of Appeals may remand for trial on question of jurisdiction without setting aside verdict, where record is otherwise satisfactory.

**7. Courts ⟨⟩406(2).**

Remanding by Circuit Court of Appeals for issues to be framed and for trial on question of jurisdiction should be allowed only where no substantial or reversible error appears in record in respect to merits.

**8. Brokers ⟨⟩82(4).**

Under South Dakota practice, proof of agreement to pay commission to broker finding purchaser at price ultimately satisfactory to vendor *held* insufficient to sustain declaration on express contract to find purchaser at fixed minimum price.

**9. Courts ⟨⟩347.**

Under Rev. St. § 914 (Comp. St. § 1537), federal courts, in determining sufficiency and scope of pleadings in action at law, are governed by practice of courts of state in which they are held.

**10. Trial ⟨⟩194(11).**

In action by broker for commissions, instruction that question of performance within reasonable time was eliminated by claim of rescission of contract was erroneous, where claim is disputed.

**11. Trial ⟨⟩253(5).**

Instruction that commissions might be recovered, if vendor subsequently sold to buyer furnished by broker for a less sum, *held* erroneous, as losing sight of express contract pleaded, and not containing requisite modifying conditions.

**12. Appeal and error ⟨⟩981.**

Trial court's refusal to grant new trial because of newly discovered evidence will not be disturbed, in absence of manifest abuse of discretion.

**13. Brokers ⟨⟩85(1).**

In broker's action for commissions, question asked defendant, relative to what change there had been, or what was reason for selling property subsequent to time of alleged rescission of contract, *held* improperly excluded.

**14. Courts ⟨⟩349.**

Under Rev. St. § 914 (Comp. St. § 1537), permitting plaintiff to call adverse party as witness for cross-examination, under Rev. Code S. D. 1919, § 2714, was proper.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by Margaret J. Morrow against B. B. Ward and wife. Judgment for plaintiff, and defendants bring error. Reversed and remanded for a new trial.

Emmett C. Ryan, of Aberdeen, S. D. (L. T. Van Slyke and L. W. Crofoot, both of Aberdeen, S. D., on the brief), for plaintiffs in error.

E. J. Grover (Amos N. Goodman, of Aberdeen, S. D., on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Defendant in error, plaintiff below, filed suit in the District Court of the United States for the District of South Dakota, to recover commission as a real estate broker upon the sale of certain property in Aberdeen, S. D. Her cause of action was thus stated:

"The defendants herein are residents of the city of Aberdeen, Brown county, S. D., and reside in their home over the Orpheum Theater in the Raddison Hotel, and that the plaintiff herein is a resident of the city of Minneapolis, Hennepin county, Minn., and is a nonresident of the state of South Dakota, and that this action is for more than $3,000. The defendants in above matter are husband and wife.

"That on or about the 1st day of August, 1919, the defendants employed the plaintiff as a broker to procure a purchaser and renter for certain real estate and personal property, owned by the defendants, described as follows: Lot 4, block 6, all in the original plat, city of Aberdeen, Brown county, S. D., lot 6, of Ward's replat of lots 1, 2, and 3, and block 6, in the city of Aberdeen, Brown county,

S. D., and all of the personal property being situated in their building, over the New Raddison Café, situated on lot 12, block 6, original plat, city of Aberdeen, S. D., and all of the personal property situated in their building and in the bedrooms over the Orpheum Theater, situated on lot 5, block 6, original plat, city of Aberdeen, S. D., which is owned by them, and the lease of the bedrooms that contain the personal property over the New Raddison Café, situated on lot 12, block 6, original plat, city of Aberdeen, S. D., and over the Orpheum Theater, situated on lot 5, block 6, original plat, city of Aberdeen, S. D., for a term of years to run concurrent with the lease on the restaurant, and which is to expire in 1920—at a price of not less than $145,000, for the real estate and personal property and $100 per month for the rental of the bedrooms over the New Raddison Café, situated on lot 12, block 6, original plat, city of Aberdeen, S. D., and over the Orpheum Theater, situated on lot 5, block 6, original plat, city of Aberdeen, S. D., and agreed to pay the plaintiff for her services in procuring such purchaser and lessor, 5 per cent. of the full amount of the purchase price and 5 per cent. on the full amount that they would receive by reason of the lease to the full term of years, making a total of $7,610, which was the reasonable value of said services.

"That in pursuance of said contract, and or or about the 1st day of January, 1920, the plaintiff found and procured a purchaser, to wit, one A. H. Brown, ready, willing, and able to purchase the said property, at said price, and introduced the said A. H. Brown to the defendants herein, for the purpose of selling the said real estate and personal property and leasing the other property to the said A. H. Brown.

"That thereafter, and on the 18th day of June, 1923, the defendants thereupon sold and conveyed the said premises and personal property and lease to the said A. H. Brown for the sum of $145,000, and leased the said property as hereinbefore set forth, for the sum of $100 per month for about six years, said lease to run concurrent with the lease for the restaurant, known as the New Raddison Café. But no part of plaintiff's said commission has been paid, although due demand has been made for the same.

"That the defendants are now justly indebted to this plaintiff in the sum of $7,610, no part of same has been paid, although duly demanded."

To this complaint defendants filed answer denying the contract set forth in the complaint, admitting that they were the owners of the property in question; that they had at some time in the year 1919, or early in the year 1920, employed the plaintiff to procure, within a reasonable time, a purchaser for said Raddison Hotel, including the furniture and equipment contained in that building and the bus used in connection with said hotel, for the aggregate price of $150,000 upon terms which would be satisfactory to the defendant B. B. Ward; the other features of the employment as set out in the complaint were denied. It was admitted that on or about the 18th day of June, 1923, the defendant B. B. Ward contracted to sell to A. H. Brown, for the sum of $145,000, lot 4 in block 6 of the original plat of Aberdeen and lot 6 of B. B. Ward's replat of lots 1, 2, and 3 of block 6 of said original plat of Aberdeen, being the Raddison Hotel building, and the hotel furniture and equipment therein located, including the bus used in connection with said hotel, and also the furniture situated in the rooms over the New Raddison Café and in six of the rooms over said Orpheum Theater, and that the defendant Kate Ward, joined with the defendant, B. B. Ward, as his wife, in executing the contract for the sale of said real estate, and defendants further admitted that as a part of the same transaction the said A. H. Brown leased for a term of about six years, at a rental of $100 per month, the rooms over the New Raddison Café and six of the rooms over the said Orpheum Theater, and that the defendants joined in the lease thereof accordingly.

For defense the answer alleged the employment of plaintiff in error as thereinabove set forth; that plaintiff in error failed to procure any purchaser who was ready, willing, and able to buy said property for the sum of $150,000, on terms satisfactory to B. B. Ward, within a reasonable time, or at all, and that after the lapse of a reasonable time, during which plaintiff was unable and failed to procure a purchaser for the property at that price, and upon said terms, or at any price and terms which were satisfactory, the employment was terminated by said defendant Ward, and the contract rescinded; that such rescission was consented to by plaintiff in error; that thereafter the said contract of employment was treated by both plaintiff in error and by defendants in error as of no further force and effect; that said defendants abandoned for a period of several years any intention of selling said property; that after a lapse of about three years defendants again decided to sell said property, and employed another agent as broker to find a purchaser therefor, and that on or about the said 18th

day of June, 1923, through the efforts of plaintiffs in error and with the co-operation of such new broker, a purchaser was found, as hereinabove set forth; that said sale and lease, which were negotiated on or about the 18th day of June, 1923, were neither of them procured by defendant in error but by plaintiffs in error with assistance of the new broker, long after the original employment had been terminated, rescinded, and abandoned; that a commission was paid to said new broker for procuring a purchaser for the property.

Upon trial a verdict was rendered in favor of defendant in error in the sum of $8,-208.59. At the close of the evidence plaintiffs in error moved to dismiss upon the ground "that there is no allegation or proof in this case to show that this suit, or the cause of action involved therein, are within the jurisdiction of this court." This motion was denied, and thereupon plaintiffs in error moved for a directed verdict in their favor. This motion also was denied.

The errors assigned fall under the following heads: (1) The action of the court in denying the motion of defendants to dismiss the action for want of jurisdiction. (2) In denying the motion of defendants for a directed verdict. (3) Errors in the charge. (4) Abuse of discretion in overruling defendants' motion for a new trial based upon alleged newly discovered evidence. (5) Error in permitting plaintiffs in error to be called as adverse parties and to be examined as if under cross-examination before being called to testify in their own behalf. (6) Alleged errors in the admission and rejection of testimony.

[1, 2] The question of jurisdiction first demands attention. It is contended by plaintiffs in error that "there was no averment in the complaint as to the citizenship of the plaintiff or proof to show that the suit or cause of action involved therein was within the jurisdiction of the court." That jurisdiction depends upon diversity of citizenship. It must be conceded upon the face of the complaint that the allegation of citizenship is insufficient. However, if in the testimony the requisite diversity is sufficiently made to appear, the trial court may, upon application, under section 954 of the Revised Statutes (Comp. St. § 1591), permit an amendment to conform with the proofs. No such application was made, and plaintiffs in error earnestly insist that no such proof was made. A careful and exhaustive examination of the record sustains plaintiffs in error in this respect. An extremely liberal construction

of the testimony of plaintiffs in error, taken in conjunction with their pleading, may perhaps, although narrowly, establish their citizenship in South Dakota; that of defendant in error remains undetermined; in fact, her testimony adds nothing to the insufficient allegation of the complaint that she is a resident of the city of Minneapolis, Minn.

At the beginning of her direct examination she says "that she resides at present in Minneapolis and did at the commencement of this action." Further on she testified: "That she formerly lived in South Dakota; that when she was a young girl she lived with her parents south of Aberdeen, at Rudolph; * * * that she had a real estate office in Minneapolis, when she was operating a real estate business there; * * * that she was in the real estate business, and had been in the real estate business, since about 1911 or 1912 up to the present time, and had dealt in real estate principally; that she had sold other property in Aberdeen besides this hotel, and had leased property here; that she had sold property in Minneapolis and other places during all of those years; * * * that during these activities she had been in Montana for a period as long as a year."

[3-5] Nowhere does she testify to a permanent residence either in terms or by inference, and to sustain the jurisdiction in this case we should be compelled to declare an allegation of residence as tantamount to one of citizenship. It is urged in behalf of defendant in error that nowhere in their answer do plaintiffs in error deny the citizenship of Margaret J. Morrow, nor did they raise the question during the trial of the case until the same was completed. The question was, however, raised by the motion to dismiss; but, independently of that, it is the duty of this court to consider a claim that the pleadings and proof do not show diversity of citizenship, even though counsel failed to argue that question and attempt to waive the assignments of error raising it (Chicago, R. I. & P. Ry. Co. v. Stephens [C. C. A. 6] 218 F. 535, 134 C. C. A. 263), because jurisdiction cannot be acquired by consent nor be presumed; it must appear upon the face of the record (Railway Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; Thomas v. Board of Trustees, 195 U. S. 207, 25 S. Ct. 24, 49 L. Ed. 160; Lumber Co. v. Franson, 203 U. S. 278, 27 S. Ct. 102, 51 L. Ed. 181; Railway Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521).

[6] In case this court finds, as it has, that the diversity of citizenship was not properly pleaded in the complaint, and that the evi-

dence was not sufficient, defendant in error asks the court to allow her to amend the complaint in this respect, and to prove the citizenship as it actually exists, under the provisions of section 274c of the Judicial Code (Compiled Statutes, § 1251c), and that the judgment, but not the verdict, be set aside; that if, upon proper issues framed, the requisite diversity of citizenship be established, the judgment may be re-entered upon the old verdict. This, in an otherwise satisfactory state of the record, we are permitted to do. Railway v. Duthie, 189 U. S. 76, 23 S. Ct. 610, 47 L. Ed. 715; Railway Co. v. Gilliland (C. C. A. 9) 193 F. 608–611, 113 C. C. A. 476; Parker Washington Co. v. Cramer (C. C. A. 7) 201 F. 878, 120 C. C. A. 216; Railway Co. v. Stephens (C. C. A. 6) 218 F. 535, 134 C. C. A. 263; Railway v. Reddick (C. C. A. 7) 160 F. 898, 88 C. C. A. 80; Railway v. Allen (C. C. A. 7) 249 F. 280, 161 C. C. A. 288.

[7] However, remanding for issues to be framed and a trial to be had on the question of jurisdiction, without setting aside the verdict on the merits, should be, and generally has been, allowed only where no substantial or reversible error appears in the record with respect to the merits.

In Railway v. Stephens, supra, it was said: "Counsel for defendant frankly state in their brief that 'after careful consideration the defendant is of the opinion that none of these other assignments are well taken, and will therefore not burden the court with a discussion of them.' We are therefore constrained to believe that the case should be considered upon its merits, with the purpose of avoiding another trial if reversible error is not found and diversity of citizenship in fact existed [citing cases]. We are the more content to adopt this course because defendant appears to have presented its full defense upon the merits, and, upon proper amendment below, will be given opportunity to contest the jurisdictional issue."

In Railway Co. v. Allen, supra, the holding was that: "A general verdict, returned on trial of an action which was without reversible error, may be permitted to stand pending an inquiry and determination by the trial court on the question of its jurisdiction."

And in Parker Washington Co. v. Cramer, supra, it was said: "We have found nothing in the record which would justify or require the trial court to put the parties to the trouble and expense of a new trial on the merits."

In all the cases above cited on this point the merits were examined, to ascertain whether, pending investigation as to the jurisdiction, the verdict should be allowed to stand.

[8] In the case at bar numerous errors are assigned. It is therefore necessary for us to examine the record, before it can be determined whether we should adopt the practice invoked by defendant in error. At the close of the testimony plaintiffs in error moved for a directed verdict. It is urged, and convincingly appears, that there is a serious variance between the allegations of the complaint and the proofs offered in support of those allegations. The complaint sets up an express contract by which defendant in error was required to find a purchaser ready, able, and willing to buy at a price of not less than $145.000. The testimony wholly fails to show that any such contract was made. In her testimony defendant in error says: That she gave Mr. Brown an approximate price because Mr. Ward had not set a definite price. That she told Brown that Ward would like to get $100,000 for the Orpheum Theater building, which was rented or leased at that time. That as to the other building, with the furniture in the entire Radisson Hotel, which was over the café and over the theater, Ward had told her to see what she could do with Brown, but to put the price around $150,000 to start with, saying: "We can come down easier than we can go up." That during the negotiations with Mr. Brown, when she had him come there, Ward never indicated that he would take any less price than $150,000. She further testified that in the talk between Brown and Ward the latter did not necessarily insist on $150,000 for the Radisson Hotel building, but asked Brown what he thought about it, and to make him a proposition; that Brown did make a proposition of $125,000. Defendant in error testified further that she did not think Ward asked Brown any price for the Radisson Hotel; that she did not remember that he set any price; that he simply asked Brown for his proposition on it, and Brown offered him $125,000; that Ward did not put an absolute price of $150,000 for the sale; that he was trying to negotiate with Brown on the Radisson Hotel building, but witness gave Brown an idea, approximately, of what Ward wanted. She further testifies that Ward did not fix a price of $150,000 for the sale of the hotel building, but said it would be easier to come down than to go up, but he did put a price on it approximately; he said to start it at $150,000.

In her letter to Brown, dated March 20, 1920, defendant in error makes this state-

ment: "I am absolutely sure that he is not going to budge on his figure of $150,000." In further support of her claim, and in stating her conception of the contract made, defendant in error testified that Ward told her that "no matter whom she brought to him that he would pay witness 5 per cent. if he made the sale to the party; that witness could bank on him doing it; that there would be no misunderstanding; that he wanted to sell the hotel, and wanted to lease the rooms over the Orpheum Theater."

B. B. Ward testifies that he agreed to pay defendant in error a commission of 5 per cent. if she found a purchaser ready, able, and willing to buy the hotel for $150,000; that the furniture was to go with it, which was in that part of the building, and also the bus; also he offered her the same terms if she found a purchaser for the theater building, and the furniture in that building, at $100,000. She produced Brown as a prospective purchaser. "Mr. Brown finally asked witness (Ward) what the proposition was, and that witness told him he wanted $150,000 for the Radisson Hotel, and also told him that he wanted $100,000 for the Orpheum Theater; that Brown thought that was too much, so he made me the price of $200,000 for the two of them; that witness did not accept that, and then Brown offered witness $125,000 for the hotel without the theater; that witness would not accept that, because he had a flat price of $150,000; that that was as far as they got."

Witness further testified: "That the only proposition Brown made him was the proposition of $125,000 for the Radisson Hotel building; that witness refused to accept that. Brown then returned to Mobridge, and that was the only time he met him." Further: "That in these negotiations there was not a word said between him and Brown about the renting of the rooms over the Radisson Restaurant, or the rooms over the Orpheum Theater; that this was not mentioned, and that there was not a word said in the conversation as to Brown buying the furniture, or anything about the furniture in the two buildings outside of the Radisson Hotel building proper."

Brown in his testimony corroborates Ward in every particular. It was not until June, 1923, a period of more than three years, that the matter was reopened between Ward and Brown, at which time Brown purchased, for $145,000, the property mentioned in the complaint of defendant in error, and leased certain other property at a rental of $100 per month. The property thus purchased was other than that which Ward testifies he offered for $150,000, and for which Brown testifies he offered $125,000. In this respect there is a sharp conflict between plaintiff and defendants.

The outstanding and uncontradicted facts are that defendant in error has declared upon an express contract to find a purchaser at a fixed minimum price, and the testimony on her part discloses an agreement to pay a commission of 5 per cent. if she found a purchaser who was willing at any time to buy at a price and upon terms ultimately satisfactory to the vendor. At no place in the testimony does it appear that a price of $145,000, for the specific property sold, was either considered or mentioned. Defendant in error herself says that no specific price was fixed. If it is sought to aid the testimony of the plaintiff by that of defendants and their witnesses, defendant in error is confronted by their sworn testimony that there was a greater price fixed for other and less property than that ultimately sold, and that no purchaser was found ready, able, and willing to purchase at that figure and upon those terms. It would appear that defendant in error has seized upon the price finally paid for the property ultimately purchased, and has declared upon it as evidencing the terms of an express contract between herself and plaintiffs in error—a contract the testimony fails to establish.

[9] The sufficiency and scope of pleadings in actions at law are matters in which the Circuit Courts of Appeals of the United States are governed by the practice of the courts of the state in which they are held. Rev. St. U. S. § 914 (Comp. St. § 1537); Bond v. Dustin, 112 U. S. 604, 5 S. Ct. 296, 28 L. Ed. 835; Glenn v. Sumner, 132 U. S. 152, 10 S. Ct. 41, 33 L. Ed. 301; National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682.

The practice in South Dakota is thus stated by its courts of last resort: "The test of the agent's right to commission for finding a purchaser is not whether his agreement with the purchaser is specifically enforceable, but whether he has found a purchaser able, ready, and willing to take the property on the terms prescribed by his principal." McLaughlin v. Wheeler, 1 S. D. 498, 47 N. W. 817; Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653. "Where a cause is tried throughout upon the issue of whether or not there is an express contract, and the complaint seeks relief only upon an express contract, the plaintiff must stand or fall upon such contract. Plaintiff

sought no amendment of his pleadings." Egan v. Burnight, 34 S. D 473, 478, 149 N. W. 176–178 (Ann. Cas. 1917A, 539).

The right of amendment to enable recovery upon quantum meruit is recognized in this case. "There is no question but what, where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or suit on quantum meruit. Ball v. Dolan, 21 S. D. 619, 114 N. W. 998, 15 L. R. A. (N. S.) 272. Under such circumstances the suit upon such transaction must be based on the contract alone." Werre v. Northwest Thresher Co., 27 S. D. 486, 490, 131 N. W. 721, 722. "Counsel's contention that appellant should have recovered a judgment, at least upon a quantum meruit, * * * is not sustainable under a complaint based upon an express contract." Morrow v. Board of Education, 7 S. D. 553, 557, 64 N. W. 1126–1128.

To the foregoing may be added some general principles of law applicable, as stated by the text-writers:

"The broker must act strictly according to the authority conferred on him by the principal. If, for example, a real estate broker accepts an employment which makes his right to compensation depend upon procuring a vendor or a purchaser on specific terms, he cannot recover if he does not perform that service." 19 Cyc. 241.

"A broker employed to find a purchaser is not entitled to a commission, where no sale is made, unless the purchaser is able, ready, and willing to take the property upon the terms specified by the principal." 19 Cyc. 246.

"If plaintiff declares on an express contract, he cannot ordinarily, failing to prove it, recover on a quantum meruit." "To entitle him to recover on a particular contract of employment he must plead it; and his proof must in all material respects conform to the allegations of the complaint; evidence at substantial variance therewith is inadmissible, and if admitted does not justify recovery." 19 Cyc. 275, 276.

"In an action upon an express contract, the plaintiff cannot recover upon proof of an implied contract. A party cannot allege one cause of action and recover upon another." 9 Cyc. 748, 749.

"In all actions on special agreements or written contracts, the contract given in evidence must correspond with that stated in the declaration." 4 Michie, 593; 9 Michie, 496.

It is our judgment that defendant in error, having declared upon an express con-

tract, has failed in a material way to sustain it by her proofs. It would also appear, from what has been said, that the jurisdiction of the District Court was not made out. Inasmuch, however, as the case must be reversed upon the merits in any event, and as upon amendment and new trial jurisdiction may be made to appear, the case should more properly be remanded without direction to dismiss for want of jurisdiction.

For the guidance of court and counsel in the future conduct of the case, we find it necessary to express some views upon the other errors assigned. Exception was taken to the following portion of the court's charge:

[10] (1) "You are instructed that the court is of opinion that, in a contract of this kind the parties to the contract contemplate the performance of the stipulation within a reasonable time, and a reasonable time is such a time as, under all circumstances as you find them, would and should be in contemplation of the parties under all the circumstances under which the contract is made. Now that fact is practically eliminated in this case, in the opinion of the court, because it is here alleged a rescission of the contract. You are instructed that a broker is ordinarily entitled to a fair and reasonable opportunity to perform. As I have heretofore explained to you, I do not think that question is here, because, if that rescission was actually made as alleged by the defendants, there isn't any question of time to perform."

[11] (2) "You are instructed that in this case, if you find that the plaintiff was the impelling cause and produced the purchaser, Brown in this case, the simple fact that Brown did not buy the property at the price first offered by the agent or by the owner, the owner was still at liberty to sell the property at a lower figure to the person produced by the agent if you find the person was so produced; if you find such to be the fact in this case, and you find the plaintiff actually produced the buyer, ready, able, and willing to buy, the seller by selling to that buyer so produced by the agent, at a less figure than they named to her or than theretofore named to the buyer, he could not thereby deprive the plaintiff of her commissions. In other words, if the plaintiff brought to the defendants a buyer ready, able, and willing to buy upon terms satisfactory to him, even if those terms differed and were less than the terms that had been given the agent and that the agent had given the buyer, if he took advantage of the negotiations and sold at a less sum than had been fixed, he could not thereby, because he sold it at a less sum at the time, for that rea-

son and that reason alone, defeat the agent of his right to commissions."

In the first of these instructions the court was of opinion that the rescission claimed by plaintiffs in error eliminated from the case the question of whether defendant in error produced a purchaser ready, able, and willing to buy at the stipulated price within a reasonable time. It should be remembered that this claim of rescission was disputed by defendant in error. If that rescission, as claimed, were established, plaintiff was not entitled to recover at all; if not established, the question of performance within a reasonable time remained in the case. The second instruction quoted does not fully cover the case; it loses sight of the express contract pleaded and does not contain the requisite modifying conditions. It is, of course, true that under proper pleadings a broker may recover his commission if a sale is made at a lower price than that first offered by the agent, or by the owner; not necessarily, however, because the agent produced the buyer in the first instance. The rule is thus stated by the commentators:

"Where the principal consummates a sale to a purchaser found by the broker, he is liable for the commission, although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional upon a sale at the price mentioned in the broker's authorization. To entitle a broker to a commission where the contract concluded differs from that which the broker was authorized to negotiate, however, the negotiations commenced by the broker must have continued uninterruptedly and he must have been actively instrumental throughout in causing the parties to consummate the transaction. So if the principal and the customer introduced by the broker cannot agree upon the terms of a sale, and the broker or his customer drops the negotiations, or the principal withdraws his authorization, the broker is not entitled to a commission upon a sale being subsequently made by the principal, acting either independently or through another broker, to the same customer on different terms." 19 Cyc. 251, and cases cited; 3 Michie, 533, 537, 538.

In our judgment, the charge criticized does not adequately safeguard the rights of plaintiffs in error in these essential particulars.

[12] Error is assigned to the action of the court in overruling defendant's motion for a new trial, based on grounds of surprise and of newly discovered evidence. "The settled rule of the federal courts is that the refusal of a trial court to grant a new trial, because of newly discovered evidence, will not be disturbed, except in a case where there is a manifest abuse of discretion." Mandes v. Midgetf, 49 App. D. C. 139, 141, 261 F. 1019–1021. We do not think such abuse of discretion is disclosed. Upon new trial, however, the evidence referred to should be, and undoubtedly will be, admitted.

[13] Error is assigned to the action of the court in overruling and sustaining objections to certain testimony. We have occasion to consider but one of these assignments. The following question was propounded by defendants' counsel to the defendant B. B. Ward, testifying in his own behalf: "Now, when you then employed a broker in the fall of 1922 to find a purchaser again, what change had there been, or what reason did you have then for intending to sell the hotel?".

[14] The court sustained the objection of plaintiff's counsel to this question. We think it should properly have been answered. Defendants had alleged, and offered testimony to prove, a rescission of the contract of brokerage early in the year 1920. The sale did not take place until June, 1923. Defendants testified that they had abandoned all thought of sale when the original negotiations between them and Brown were broken off. They assigned as a reason for this that they had decided to give their son an opportunity to demenstrate his ability to manage the hotel; later on, becoming dissatisfied with his conduct, their desire to dispose of the property was renewed. This testimony was material as bearing upon the question of rescission and of abandonment. The other questions asked, upon which an issue is made by the assignments, were all immaterial under the issues framed, and should properly have been excluded. We are unable to perceive that any substantial prejudice resulted therefrom.

Finally, it is urged that the court erred in overruling the defendants' objection to being called as adverse parties and examined as if under cross-examination before being called to testify in their own behalf. Section 2714, Revised Code of South Dakota 1919, provides that a party to the record may be called as a witness at the instance of the adverse party, and may be examined as if under cross-examination, and that such adverse party shall not be bound by his testimony. While this statute establishes a procedure contrary to the rules of evidence at common law, it is uniformly upheld in the national courts under the Conformity Act (R. S. § 914). A

similar statute was before the Supreme Court in Dravo v. Fabel, 132 U. S. 487, 10 S. Ct. 170, 33 L. Ed. 421, in which it was impliedly held that the act providing that the practice, pleadings, forms, and modes of proceedings in civil cases in the courts of the United States shall conform, as nearly as may be, to the practice, pleadings, forms, and modes of proceedings existing at the time in like causes in the courts of record of the state, applies to actions at law, but not to equity and admiralty causes, because the latter are expressly excepted. The court overruled the objections to this testimony, without ruling that the answers would or would not be binding upon the plaintiff. We are unable to perceive from the record that any prejudice resulted, nor that reversible error in this respect was committed.

For the reasons hereinabove set forth, the judgment will be reversed, and the case remanded for a new trial.